DAVIS, Judge.
The State of Florida challenges the trial court’s order granting the suppression of a statement made to law enforcement officers by Gonzalo Rafael Venegas after he was taken into custody on suspicion of second-degree murder. Venegas cross-appeals the trial court’s denial of his motion to suppress a knife that was located using information obtained during that same custodial interrogation. We affirm the trial court’s granting of the motion to suppress the statement but reverse the trial court’s denial of the motion to suppress the knife.
Venegas was employed with a construction crew working on the Collier County courthouse. After an incident on the fifth floor, a stabbing victim was transferred to the hospital, where he later died. Sheriffs detectives arrived at the courthouse and interviewed construction workers. Based on these interviews, law enforcement determined that Venegas was involved in the incident. After the detectives made contact with Venegas, he agreed to go with his wife to a police substation for questioning.
It was understood that Venegas was being detained at the substation and was not free to leave at the time of the interrogation. At the outset of the taped interview, a detective read the Miranda warning to Venegas, and Venegas indicated that he understood his rights. The detectives explained that they were trying to decipher the circumstances of the stabbing in order to determine whether it was a premeditated act or the result of a heated confrontation. One of the detectives asked, “Do you want to talk to us now without a lawyer present?” Venegas responded, “No, because there is someone dead.”
The detective then asked Venegas for the name of his lawyer, to which Venegas responded, “I want to talk with my wife. I’ve never had a lawyer because I’ve never committed any crimes or done anything.” Again, the detective asked if Venegas wanted to call his attorney, and again Venegas responded, “I want to see — talk for a moment with my wife.”
*914 At this point the detective stated: “Okay. We’re going to have to either get— or going to ask you to consent to give us the knife, the tool that you use[d].... Or I’m gonna have to go apply for a search warrant and search his house and his truck.” The other detective then said, “Do you understand me? Any way that we have to do it. You can give us permission and you can give us the tool that was used or we are going to — .” At that point, Venegas interrupted, stating, “No, I know where it is; it’s in the bathroom. Yes I put it in the bathroom because I got scared when this happened.” Based on this information, the detective went to the portable toilet on the construction site and located the knife.
The trial court determined that Venegas made “an unequivocal request for an attorney” and that the detectives failed to immediately cease questioning Venegas after he asserted his rights to have his attorney present during the questioning. Thus the trial court ruled that all the statements made by Venegas subsequent to his invoking his right to counsel must be suppressed. We affirm this ruling of the trial court. See Francis v. State, 808 So.2d 110, 126 (Fla.2001) (“[O]nce an accused has invoked his right to counsel[,] any interrogation must immediately cease until counsel is made available, unless the accused himself initiates further communications with the police.”).
However, with regard to Venegas’ motion to suppress the actual knife, the trial court denied the motion, distinguishing Venegas’ Fifth Amendment right against self-incrimination from his Fourth Amendment rights guarding against unreasonable searches and seizures and concluding that there “is no reason to apply the Wong Sun [v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963),] ‘fruit of the poisonous tree’ doctrine” [1] in this case. Venegas now challenges this ruling, and we reverse.
The trial court based its ruling on United States v. Patane, 542 U.S. 630, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004). In that case, law enforcement arrived at the Pa-tane residence as part of an investigation of Patane’s alleged violation of a restraining order. At the outset of the conversation, the investigating officer attempted to advise the defendant of his rights pursuant to Miranda; however, Patane interrupted the officer, insisting that he knew his rights. Since the giving of the Miranda rights never was completed, Patane’s subsequent statements, although made voluntarily, were considered to be “unwarned.” Id. at 634, 124 S.Ct. 2620. As a part of those unwarned statements, Patane advised the law enforcement officer of the location of a firearm in the bedroom of his home. The officer obtained Patane’s consent to enter his bedroom and discovered the firearm in the location provided by Patane.
The Patane Court concluded that the facts of that case provided “no reason to apply the ‘fruit of the poisonous tree’ doctrine” because simply excluding the unwarned statement was a sufficient deterrent to taking unwarned statements in future custodial interrogations. 542 U.S. at 642, 124 S.Ct. 2620. Patane’s gun was found as the result of a voluntary state *915 ment made by the defendant without his having been warned of his Miranda rights, and thus no police misconduct was involved in that case. “ ‘[T]he exclusion of unwarned statements ... is a complete and sufficient remedy[1] for any perceived Miranda violation.... Thus, unlike unreasonable searches under the Fourth Amendment or actual violations of the Due Process Clause or the Self-Incrimination Clause, there is, with respect to mere failures to warn, nothing to deter.” Id. at 641-42, 124 S.Ct. 2620 (footnote omitted) (quoting Chavez v. Martinez, 538 U.S. 760, 790, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003)).
However, such reasoning does not apply to the instant case, which is factually distinguishable from Patane. First, this case did not involve a “mere failure[ ] to warn.” Rather, the law enforcement officers warned Venegas of his rights, and he invoked his right to counsel. Despite such invocation, the officers continued to interrogate Venegas by telling him that he would have to consent to giving them the knife or that they would obtain a search warrant to search his house. See Everett v. State, 893 So.2d 1278, 1284 (Fla.2004) (“ ‘A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect ... amounts to interrogation.’ ” (quoting Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980))). Once Venegas stated that he wanted to speak with an attorney, the officers should have terminated their questioning until either Vene-gas consulted with his attorney or he initiated further conversation; any questioning after that point amounted to unlawful interrogation. See Francis, 808 So.2d at 126.
Furthermore, here, unlike in Patane, the exclusion of the physical evidence is necessary to deter future improper police conduct, namely continuing an interrogation after the suspect invokes his or her right to counsel. To exclude only the statement and not the knife in this case would not only reward the police for intentionally violating Venegas’ right to counsel but would also encourage future such violations by suggesting that even if any incriminating statements have to be excluded, the State still could benefit from any incriminating “nontestimonial” evidence it may be able to obtain.
Finally, Patane involved a voluntary statement. But Venegas’ statement here regarding the location of the knife cannot be considered voluntary. “ ‘[V]ol-untariness ... is to be determined by an examination of the totality of the circumstances surrounding the confession.’ ” Baker v. State, 71 So.3d 802, 814 (Fla.2011) (quoting Owen v. State, 862 So.2d 687, 695 (Fla.2003)). Here, Venegas’ advising the detectives of the location of the knife was a direct response to the unlawful interrogation conducted in violation of his right to counsel. As such, it cannot be deemed voluntary.
Because Patane is factually distinguishable from the instant case, it does not apply here. And the fruit of the poisonous tree doctrine requires the exclusion of the knife that law enforcement located as a result of the involuntary statement made by Venegas in response to unlawful interrogation conducted after he had invoked his right to counsel. The trial court therefore erred in denying Venegas’ motion to suppress the knife, and the order denying the motion must be reversed.
Affirmed in part, and reversed in part.
KELLY and MORRIS, JJ., Concur.

. In determining whether evidence should be excluded as "fruit of the poisonous tree,” the "question ... is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.’ ” Wong Sun, 371 U.S. at 488, 83 S.Ct. 407 (quoting John MacArthur Maguire, Evidence of Guilt 221 (1959)).